IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| In the Matter of the Application of the United States of America for a Search and Seizure of One Blue "Coolpad" Cellular Phone with SIM CARD 8901240132764876944 belonging to Larone DANIEL that is in the custody of the Tennessee Bureau of Investigation's Chattanooga Office | Case No. 1:21-mj- 144 <br> Magistrate Judge Lee |

## AFFIDAVIT

I, Lauren Moon, being duly sworn, state as follows:

### Background of Affiant

1. I am a Task Force Officer with the United States Postal Inspection Service. I am further employed as a Special Agent with the Tennessee Bureau of Investigation and currently assigned to the Drug Investigation Division for the Eastern District of Tennessee. I have been employed in that capacity since August of 2019. Currently, I am responsible for investigating crimes involving the United States Postal Service ("USPS"), specifically those involving the use of the United States Postal Service to facilitate the transport of illegal narcotics.

2. I am a Law Enforcement Officer under the authority of Title 18, United States Code, Section 3061. As such, I am authorized to make arrests with or without warrants for offenses made in my presence or when I have reasonable grounds to believe the person has committed or is committing a felony against the United States. I am also authorized under this statute to carry firearms and make seizures of property as provided by law.

3. I have received training in and have experience investigating violations of federal narcotics laws including, but not limited to, Title 21, United States Code, Sections 841, 843, and 846, and federal money laundering laws, including Title 18, United States Code, Section 1956(a).

I have participated in numerous investigations involving a variety of investigative techniques, including physical and electronic surveillance methods; controlled purchases and deliveries of narcotics; the analysis of a wide variety of records and data, including pen register and trap and trace data as well as cell phone location data; and the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

4. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

5. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones; pagers, both numeric and two-way; and computers so that they can conduct their business at virtually any time without unnecessary delay. Your Affiant knows that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or

sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones," all of the documents and information discussed within this section can be held on a smart phone in electronic format as well

6. Through investigations, my training and experience, and conversations with other law enforcement officers, I have become familiar with the methods used by narcotics traffickers to distribute, transport, store, import, and safeguard controlled substances. I know that narcotics trafficking organizations have developed a number of methods to insulate their illegal activities from law enforcement detection.

### Basis and Purpose of Affidavit

7. I am currently assigned to an investigation involving the shipment of illegal narcotics from California to the Eastern District of Tennessee. More specifically, this investigation involves subjects in the Ontario, California, area utilizing the United States Postal Service to

transport/deliver parcels containing illegal drugs to intended recipients in the Eastern District of Tennessee. As a result of my personal participation in this investigation and my conversations with other law enforcement officers involved in this investigation, I am familiar with all aspects of this investigation. The information in this affidavit is based on interviews of witnesses, my own observations and actions, information received from other law enforcement agents, my experience and training, and the experience of other agents.

8. This affidavit is submitted for the limited purposes of establishing probable cause to believe that a criminal offense has been committed and that evidence thereof is contained in the blue "Coolpad" cellular device seized from Larone DANIEL, following his acceptance of a drug parcel following a controlled delivery by the United States Postal Inspection Service. This phone is now in the possession of the Tennessee Bureau of Investigation's Chattanooga Office.

9. Because of the limited purpose of this Affidavit, I have not included all of the facts known to me or other law enforcement officers about the investigation.

### The Target Cellular Phone

10. The cellular phone that is the subject of the attached application is one blue Coolpad cellular phone as defined in Attachment A. The phone was in Larone DANIEL'S possession at the time he was detained following his acceptance of a drug parcel following its controlled delivery by USPIS. I placed the phone into a locked container at the TBI Chattanooga Office, pending the application of a search warrant for this device and its contents.

11. I believe that information contained within Larone DANIEL'S cellular phone will provide evidence of a criminal offense or offenses, namely the distribution of and conspiracy to distribute narcotics, in violation of Title 21, United States Code, Sections 841, 843, and 846.

## Probable Cause

12.   I and other law enforcement have been investigating a drug trafficking organization that Larone DANIEL is known to associated with. Information discerned during this investigation indicates that Larone DANIEL and his associate, Alvin BONNER, have been working with one another to obtain drug parcels in Eastern District of Tennessee, which are shipped from the state of California via the United States Postal Service.

13.   On June 7, 2021, this agent intercepted a USPS parcel in the Eastern District of Tennessee which was identified by tracking number EJ 879 798 192 US. This parcel was addressed to Alvin BONNER at 4025 Veterans Way, Chattanooga, Tennessee 37411. The listed sender of this parcel was Munos Fabricator of 1413 W Brooks St., Ontario, CA 91762.

14.   On June 7, 2021, at approximately 1:00 PM EDT, this agent made a controlled phone call to Munoz Auto Repair at phone number (909)-935-0300 which is the listed business phone number. This agent made contact with a male who identified himself as "Alfredo", the owner of Munoz Auto Repair. Due to the language barrier, this agent merged the controlled call with TBI Special Agent Gloria Tayes who is fluent in Spanish. Agent Tayes asked Alfredo if his company would have sent any packages to Chattanooga, Tennessee within the past two weeks and he advised they would not. Alfredo further advised that while he does fabrication work, he doesn't own or operate a separate business as "Munos Fabricators" as displayed on the parcel. This call was audio-recorded and will be maintained by this agent for evidentiary purposes.

15.   Based on the information available to this agent, a federal search warrant was applied for in the Eastern District of Tennessee for USPS Parcel EJ 879 798 192 US. The search warrant (Case No. 1:21-mj-103) was issued by United States Magistrate Judge Christopher Steger on June 7, 2021, at approximately 4:00 PM EDT. Upon execution of the search warrant, the parcel

was found to contain approximately 510 grams of blue "M Box 30" pills (suspected fentanyl, consistent in appearance with known fentanyl pills) and approximately 3,318 grams of a green leafy substance (suspected marijuana). The evidence was then transported to the TBI Chattanooga Office and secured in a locked evidence container. On June 7, 2021, the Court issued an anticipatory search warrant for 4025 Veterans Way in Chattanooga. (originally captioned as Case No. 1:21-mj-104, reassigned Case No. 1:21-mj-111).

16. On June 8, 2021, a portion of the green leafy substance was placed into the original parcel. Inspector James Fincher with the United States Postal Inspection Service conducted a controlled delivery of this parcel to 4025 Veterans Way Chattanooga, TN 37411, which is the known residence of Alvin BONNER. Multiple agencies conducted surveillance of the controlled delivery and activities at the residence following the controlled delivery. Inspector Fincher was directed by an individual at the residence to set the parcel at the front of the house near the doorstep.

17. Approximately ten to fifteen minutes later, a tan 2006 Chevrolet Tahoe with Tennessee Registration "2M13G6" drove past this agent and assisting agents in the direction of Veterans Way. This vehicle was later found to be registered to Larone DANIEL at 3411 1st Avenue, Chattanooga, Tennessee 37407. The vehicle was observed to be occupied with at least a driver and one passenger. Sgt. Jeremiah Cook with the Chattanooga Police Department ("CPD") Swat Team observed an African-American male exit the driver's seat of the Tahoe and grab the parcel from the front yard area of 4025 Veterans Way. Sgt. Cook observed the male subject, later identified as Larone DANIEL, place the parcel in the Tahoe before re-entering the driver's seat.

18. CPD SWAT met the Tahoe as it attempted to leave the location in which it was parked at the dead end of Veterans Way. Upon coming up to the SWAT truck, Larone DANIEL stopped and then accelerated backwards striking a utility pole and unoccupied vehicle. DANIEL

6

Case 1:21-mj-00144-SKL   Document 2   Filed 07/22/21   Page 6 of 10   PageID #: 10

then fled the scene on foot and was located by CPD personnel in a residential area near 901 Talley Road where he was taken into custody. This agent conducted a search of DANIEL's pants pocket following his arrest. This agent located a blue "Coolpad" cellular device (unknown model) with SIM Card # "8901240132764876944." The USPS parcel was located in the backseat of DANIEL'S vehicle. Additionally, agents located additional marijuana, THC vapor cartridges, a loaded Glock 23 with Serial Number "BDWF253," and multiple documents bearing Larone DANIEL's name. Based on a review of Larone DANIEL's criminal history, DANIEL is a multi-time convicted felon and prohibited by law from possessing firearms and ammunition. The only other subject within the vehicle was a juvenile passenger.

19. Larone DANIEL sustained an injury to his leg during flight which required immediate medical attention. DANIEL opted to be transported by a personal vehicle to obtain the medical treatment.

20. This agent and ATF Special Agent Larkins conducted an audio recorded interview with Alvin BONNER at the conclusion of the controlled delivery. Upon being issued his Miranda Rights, BONNER voluntarily agreed to speak to agents. BONNER advised agents he previously served a sentence in a federal penitentiary with DANIEL. BONNER informed agents that DANIEL let him know about the previous package by telling him to be expecting "something" (at his residence). This agent again inquired about why DANIEL was utilizing BONNER'S address and BONNER advised agents he was hoping to "get something" off of it. This agent confirmed with BONNER that he was saying he was hoping to get a cut, or portion, of "weed" in exchange for allowing DANIEL to use his address for the package to which BONNER did confirm. BONNER advised he did not profit in this manner off the last package and did not see what was

7

inside of it. BONNER advised that he did call DANIEL to let him know the package had been delivered.

21. While there were other cellular devices located in Larone DANIEL's vehicle, the Coolpad cellular device which is the subject of this warrant was located on DANIEL's person and was powered on. The phone did appear to be receiving activity (calls/texts) to the device indicating it was also functioning at the time it was located in DANIEL's pocket.

22. Based on the aforementioned, this agent believes that the search of DANIEL'S device will reveal illegal activity related to this drug trafficking organization and DANIEL'S role with its illicit activities.

23. Your Affiant requests that this affidavit and all attendant paperwork – including the search warrant, search warrant application, attachments, and any resulting orders – be filed under seal and remain sealed until further order of the Court.

**Planned Investigation**

24. Based on my knowledge, training, and experience, I know that electronic devices can store information, including images, messaging files, and other data, for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the devices were used, the purpose of use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

*Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many

9

parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

26. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

*Lauren Moon/USPIS TFO*
Lauren A. Moon
Task Force Officer
United States Postal Inspection Service

SUBSCRIBED AND SWORN before me this 22 day of July, 2021.

Hon. Susan K. Lee,
United States Magistrate Judge

10